# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| DAVID BOUSE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:16-CV-01493 JAR |
| NANCY A. BERRYHILL,[1] ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying David Wayne Bouse's applications for disability insurance benefits under Title II and supplemental social security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

**I. Background**

On September 10, 2013, Bouse protectively filed an application for disability insurance benefits and supplemental social security income, alleging disability beginning January 1, 2012, due to depression, anxiety, and debilitating neck and back pain. (Tr. 12, 15.) After his application was denied at the initial administrative level, Bouse requested a hearing before an administrative law judge ("ALJ"). (Tr. 6.) A hearing was held on January 14, 2015. (Tr. 12.)

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Thereafter, Bouse underwent a consultative examination. (Tr. 12.) The ALJ issued a written decision denying Bouse's application on September 10, 2015. (Tr. 12-23.) On July 23, 2016, the Appeals Council of the Social Security Administration denied Bouse's request for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000).

Bouse filed this appeal on September 21, 2016. (Doc. 1.) The Commissioner filed an Answer. (Doc. 14.) Thereafter, Bouse filed a Brief in Support of his Complaint (Doc. 20), the Commissioner filed a Cross Brief in Support of the Answer (Doc. 27), and Bouse filed a Reply Brief (Doc. 32).

## II.  Facts

The Court adopts Bouse's Statement of Facts (Doc. 20-1), as supplemented by the Commissioner's Response to Bouse's Statement of Facts (Doc. 28), and the Commissioner's Statement of Additional Facts (Doc. 29). The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III.  Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Brantley v. Colvin*, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

exists in the immediate area in which she lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can

return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *Id*.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. *Brantley*, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id*. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Andrews v. Colvin*, 791 F.3d 978, 983 (8th Cir. 2015); *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the

Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

    (1) The findings of credibility made by the ALJ;
    (2) The education, background, work history, and age of the claimant;
    (3) The medical evidence given by the claimant's treating physicians;
    (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
    (5) The corroboration by third parties of the claimant's physical impairment;
    (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
    (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

### IV. Decision of the ALJ

The ALJ determined that Bouse met the insured status requirements of the Social Security Act through December 31, 2013, and had not engaged in substantial gainful employment since January 1, 2012, the alleged onset date of disability. (Tr. 14.) As relevant to this appeal, the ALJ determined that Bouse had the severe impairments of degenerative disc disease, depression, dysthymic disorder, anxiety, and alcohol dependence in remission. (Tr. 15.)

After considering the entire record, the ALJ determined that Bouse had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) except that he:

> [C]and lift and/or carry 10 pounds frequently and 20 pounds occasionally. He can stand and/or walk for six hours and sit for six hours of an eight-hour workday. He can occasionally climb and frequently stoop, kneel, crouch, crawl, and/or reach overhead. He must avoid extreme cold. [He] is able to perform simple and routine tasks.

5

(Tr. 17.) Of note, the ALJ found that Bouse "can occasionally interact with supervisors and coworkers, but he is unable to communicate with the general public on behalf of the employer." (*Id.*)

The ALJ further found that Bouse did not have past relevant work but determined that there are jobs that exist in significant numbers in the national economy that he can perform, citing Social Security Medical-Vocational Rule 201.28, 20 C.F.R. Pt. 404. (Tr. 22.) The ALJ therefore concluded that Bouse had not been under a disability from January 1, 2012—the alleged onset date—through the date of his decision, September 10, 2015. (Tr. 23.)

## V. Discussion

Bouse argues that:

- A. The ALJ erred in determining Bouse's RFC;
- B. The Commissioner did not meet her burden of establishing that there is other work in the national economy that Bouse can perform;
- C. The ALJ failed to evaluate the combined effects of all of Bouse's impairments;
- D. The ALJ posed inadequate hypothetical questions to the vocational expert and in improperly relying upon the responses;
- E. The Commissioner and ALJ both erred by not finding the plaintiff disabled.

(Doc. 20.)

**A. The ALJ did not err in determining Bouse's RFC.**

The claimant's RFC is defined as the most he can do despite the combined effects of all of his credible limitations. *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including his testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Voegtlin v. Colvin*, No. 4:11CV1980 HEA, 2014 WL 651378, at *4 (E.D. Mo. Feb. 19, 2014) (citing *McCoy*, 648 F.3d at 605). It is the claimant's burden, not the

Commissioner's, to prove the claimant's RFC.  *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

After recounting Bouse's testimony, the ALJ determined that, "[a]lthough [he] described disabling symptoms resulting from his medical impairments, the record is not consistent with that conclusion." (Tr. 18.) Bouse implies that the ALJ put too much weight on his daily activities—he testified that he lived independently and had for a time helped care for his aging parents—but failed to account for his neck and back pain, hip pain that made sitting for long periods of time painful, headaches, bronchitis and acute bronchospasm, and past heart attack. (Doc. 20 at 5-6.) Conceding that there was no documentation supporting his alleged hip pain or heart attack, Bouse asserts that "[s]ymptoms may not be disregarded solely because they are not substantiated by objective medical evidence" (*id.* at 6), and argues that the ALJ's reasoning was not "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight" (*id.* (quoting SSR 96-7P)).

The Court disagrees. The ALJ considered Bouse's subjective complaints and determined that they were "out of proportion to the objective medical evidence." (Tr. 18.) To the extent the ALJ discussed Bouse's daily activities, he did so to highlight the inconsistency with Bouse's stated limitations. Bouse testified that he had significant and worsening back pain which he rated as six or seven on a ten-point pain scale, but he reported that he was able to care for his parents and take care of their house (Tr. 305), had no difficulties lifting, squatting, bending, standing, reaching, walking, sitting, or kneeling (Tr. 197), had no problem cleaning or feeding himself (Tr. 47), and routinely walked to a hotel one mile from his home to help out in the laundry, where he lifts linens into and out of the washer and dryer (Tr. 47). The ALJ's

7

conclusion that this activity contradicts Bouse's alleged symptoms is supported by record evidence and is not indicative of undue weight placed on that activity or a disregard for Bouse's symptoms.

Similarly, while the ALJ did not discuss in great detail Bouse's subjective complaints of neck pain, difficulty with sitting, headaches, bronchitis, or heart attack, his analysis in support of the RFC makes clear that the objective evidence to the contrary was more persuasive. For instance, the ALJ noted that Bouse refused to seek medical treatment for pain despite being covered by Medicaid, suggesting that his neck and hip issues are not as serious as he suggests. (Tr. 18.) Likewise, Bouse's medical records or testimony indicate that he is able to manage his headaches with over-the-counter medication (Tr. 392); that his bronchitis and bronchospasm were temporary such that they do not interfere with his future ability to maintain employment (Tr. 338, 342 (no chest pain, shortness of breath, productive cough, or dyspnea following treatment)); and that he was never formally diagnosed with a heart attack, only that he was told by a hospital technician that he was exhibiting the symptoms of one before being transferred for a mental health commitment (Tr. 60). In short, the record evidence does not demonstrate that the ALJ disregarded Bouse's subjective complaints; it is simply that the complaints were either uncorroborated by medical evidence or would not interfere with Bouse's life in the way Bouse asserts.

Bouse further argues that "[t]he RFC does not reflect [his] depression, anxiety or anger or his many other mental disorders." (Doc. 20 at 8.) Specifically, he lists problems with social functioning, memory, concentration, completing tasks, stress, changes to his routine, panic attacks, and large crowds. (*Id*. at 7-9.) He reasserts that he "had to leave his last four full-time jobs due to emotional problems, anxiety, and stress," and that significant stress or changes to his

routine lead to "episodes of decompensation." (*Id.*) Put simply, Bouse argues that "[t]he RFC does not reflect the fact that [he] does not respond to stress in a manner that would be acceptable to an employer" and that "[t]he RFC assessment is simply conclusory and does not contain any rational[e] or reference to the supporting evidence." (*Id.* at 8.)

Again, the Court disagrees. The ALJ cited numerous evaluations by Bouse's treating specialists, which "showed [him] to be easily engaged in conversation and cooperative with good hygiene, goal-directed flow of thoughts, good memory, and fair insight and judgement." (Tr. 19.) The ALJ also cited multiple examples of Bouse himself reporting "improvement in his psychiatric symptoms with treatment." (*Id.*) The ALJ noted that Bouse had been hospitalized twice for suicidal ideation and recognized that there was also record evidence of multiple diagnoses of mental illness. (*Id.*) However, after reviewing all of that evidence, the ALJ determined that Bouse's conditions "may not exist at the level of severity assumed . . . and may have other mitigating factors against their negative impact on [his] ability to engage in work activity." (Tr. 19.) To that end, the ALJ also noted that Bouse had performed at least two jobs after his alleged onset date, including ongoing employment in the hotel laundry, which contradict his allegations of total disability. (Tr. 18.)

Finally, Bouse argues that the ALJ placed too little weight on his treating source opinions and too much weight on the agency-ordered consulting opinion. (Doc. 20 at 11-12.) The ALJ considered several "global assessment of functioning" ("GAF") scores assigned by treatment specialists at Pathways Community Behavioral Healthcare, which ranged from 15 to 65 on a 100-point scale. (Tr. 19.) But the ALJ accorded the GAF scores little weight because, according to the Diagnostic and Statistical Manual of Mental Disorders—from which the test comes—a patient's GAF score frequently changes and, in any event, "may have little or no bearing on an

9

individual's social and occupational functioning." (Tr. 19.) In addition, Bouse's treating psychiatrist often assigned the same GAF score despite changes in Bouse's subjective mental health complaints, which further suggests the GAF does not correlate with employability. (Tr. 20.) Given the flaws inherent in the GAF scale, the ALJ's decision to accord it little weight was not error.

The ALJ did not err by according little weight to the opinion of Bouse's treating psychologist, Thomas J. Spencer, Psy.D., whose evaluation lacked specificity and was internally inconsistent. (Tr. 20.) For instance, Dr. Spencer noted some impairment with memory, attention, and concentration, as well as several mental health issues, which he believed would interfere with Bouse's ability to work but also reported that appropriate treatment was likely to improve Bouse's condition. Further, while Dr. Spencer stated that Bouse would have difficulty performing work, he assigned Bouse GAF scores[2] that do not correspond to significant difficulties. (Tr. 20.)

The ALJ gave partial weight to the opinion of Disability Determination Services consultant Stanley Hutson, Ph.D., who reviewed Bouse's file. (Tr. 20.) The ALJ actually noted that Dr. Stanley's opinion understated Bouse's limitations regarding concentration, persistence, and pace, and found that therefore it was less reliable. (Tr. 21.) The ALJ did not err in discounting an expert opinion based on Bouse's subjective complaints.

Nor did the ALJ err in according significant weight to the opinion of John Demorlis, M.D., who conducted a consultative examination of Bouse. (Tr. 21.) As part of that examination, Dr. Demorlis observed Bouse's range of motion, gait, motor function, and reflexes, percussed Bouse's vertebral column, and asked Bouse to walk on his toes and heels and to

---

[2] Although the ALJ concluded that GAF scores are not an objectively reliable indication of a patient's abilities, they are relevant to the internal inconsistency of Dr. Spencer's subjective assessment.

perform a complete squat. (*Id.*) Because Dr. Demorlis's assessment was based on direct observation and aligned with the description of physical ability and activity level Bouse provided at the examination, the ALJ found it credible. (*Id.*) The Court concludes that the ALJ's RFC assessment considered all of the record evidence, including Bouse's testimony, medical treatment records, and medical opinion evidence. *See Voegtlin*, 2014 WL 651378, at *4.

### B. The Commissioner met her burden of establishing that there is work that Bouse can perform.

Bouse next argues that he is unable to perform the jobs identified by the ALJ—Assembler of Plastic Hospital Products, Production Assembler, and Marker. (Doc. 20 at 12-14.) Specifically, he asserts that his depression would lead to excessive absenteeism; he cannot perform light work; he cannot perform unskilled work; and that the three jobs identified conflict with his inability to follow directions, interact with customers, or work with coworkers. (*Id.*) In short, Bouse argues that the ALJ did not consider his "total physiological well-being." (*Id.* at 12 (citing *Reinhart v. Sec'y of Health & Human Servs.*, 733 F.2d 571, 573 (8th Cir. 1984)).)

The ALJ and Commissioner "must provide evidence about the existence of work in the national economy that [Bouse] can do, given [his] residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1512. The jobs identified in the ALJ's decision are all light work positions requiring Level 2 reasoning. Dictionary of Occupational Titles ("DOT") Nos. 712.687-010, 706-387.010, 209.587-034. None of the positions require significant interaction with instructions or helping others. DOT Nos. 712.687-010, 706-387.010, 209.587-034.

Bouse argues that his depression keeps him in bed two to three days a week—too often to maintain any job that requires regular attendance. (Doc. 20 at 13.) The Court concludes that the ALJ'sanalysis supporting Bouse's RFC contained evidence to support a finding that Bouse could

11

hold a steady job.  As noted above, multiple examinations showed that Bouse was "easily engaged in conversation and cooperative with good hygiene, goal-directed flow of thoughts, good memory, and fair insight and judgement." (Tr. 19.)  Such evidence of Bouse's mood and self-care is inconsistent with a degree of depression that keeps one in bed multiple days per week.  Second, Bouse reported that treatment was effective in improving his psychiatric treatment. (*Id.*)  Given that evidence, Bouse's depression does not preclude regular attendance at work.  Third, Bouse performed at least two jobs after his alleged onset date and was apparently performing a regular job at the time of the hearing.  That is direct evidence that Bouse can maintain a consistent working schedule, his depression notwithstanding.

Bouse next argues that his physical disabilities preclude him from even light work.  Light work requires a worker to "[e]xert[] up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently" and "requires walking or standing to a significant degree; . . . sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or . . . working at a production rate pace entailing the constant pushing and/or pulling of materials." DOT, Appx. C. The ALJ further narrowed Bouse's RFC by limiting him to an eight-hour work day including no more than six hours of standing, walking, or sitting. (Tr. 17.)  The Court concludes that there is evidence to support the ALJ's finding that Bouse can perform light work.  First, Bouse himself reported at the consultative examination that he had "no limitations with respect to standing or lifting," and, although the ALJ determined that Bouse's lifting and carrying ability was somewhat less than Dr. Demorlis opined, the results of the examination support a finding that Bouse can handle the weights required for light work. (Tr. 21.)  Likewise, the evidence cited in the ALJ's RFC analysis supports a finding that Bouses' back, neck, and hip pain are not so severe that he is unable to walk or sit as required for light work—Bouse's daily activities were

inconsistent with pain as severe as he reports (Tr. 305), he stated on a Social Security Administration form that he had no issues walking or sitting (Tr. 197), and he routinely walks a mile to perform commercial laundry work (Tr. 47). Bouse additionally asserts that his history of insomnia and heart attack make light work impossible, (Doc. 20 at 13), but those conditions are not supported by the record.

Next, Bouse argues that his struggles with concentration and persistence prohibit even unskilled work. (*Id*.) As noted, the jobs identified by the ALJ require Level 2 reasoning; a worker must "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id*. The Court concludes that the record supports the ALJ's finding that Bouse can perform Level 2 reasoning. Significantly, Bouse testified that for a period of six months, well after his alleged onset date, he had done work as an auto mechanic (Tr. 44-46)—a job the DOT classifies as requiring Level 4 reasoning on par with bookkeeping and navigation.[3] DOT No. 620.261-010. Likewise, working out of his home for six months on projects that his customers would bring at irregular intervals tempers Bouse's assertion that minor changes to routine lead to episodes of decompensation. (*Id.*) Moreover, all three jobs identified by the ALJ are repetitive in nature, with little change from day to day. DOT Nos. 712.687-010, 706-387.010, 209.587-034. In addition, Bouse's documented ability to engage in conversation, "goal-directed flow of thoughts," and "fair insight and judgment" suggest that he can concentrate well enough to perform Level 2 work. The same evidence contradicts Bouse's argument that his "Mental Residual Functional Capacity" was too limited to perform the jobs listed.

---

[3] The Court also notes that the DOT classifies work as an auto mechanic as medium work with "[p]hysical demand requirements . . . in excess of those for Light Work." DOT No. 620.261-010.

13

Bouse also attacks specific requirements of each job, which he argues make them unworkable for him. He argues that his "problems with paying attention and understanding and completing tasks" would make him so uncomfortable that he "would want to be alone." (Doc. 20 at 14.) That discomfort "would increase his stress level even further which would cause him more anger and anxiety and could lead to more outbursts," making him unfit for all three jobs. (*Id*.) The Court reiterates that the ALJ's RFC analysis cites evidence contradicting Bouse's alleged inability to perform the mental requirements of the work and that none of the three requires significant interaction with others. *See* DOT Nos. 712.687-010, 706-387.010, 209.587-034. Bouse additionally argues that he "cannot be a Marker as it might well require him to be around customers." (Doc. 20 at 14.) Nothing in the DOT description of the work supports this assertion. In fact, the description states that the job requires no talking or hearing at all. DOT No. 209.587-034. The Court concludes that the ALJ cited sufficient evidence to support his finding that Bouse can perform work as an assembler or marker as described in his RFC.

### C. The ALJ properly evaluated the combined effects of all of Bouse's impairments.

Bouse argues that, because he suffers from "both strength limitations and nonexertional limitations, such as major depression and anxiety, full consideration must be given to all of the relevant facts in the case." (Doc. 20 at 14.) He cites "marked difficulties in social functioning and in maintaining concentration, persistence or pace" as indications of his non-exertional limitations and points to "two episodes of decompensation requiring hospitalization" and the "2 to 3 days a week, on average, in which he has difficulty merely getting out of bed." (*Id*. at 15.) In light of those limitations, Bouse argues that "even a minimal increase in mental demand or change in the environment would cause [him] to decompensate." (*Id*.)

The Court notes that the ALJ devoted substantial discussion to the combined effects of all of Bouse's conditions, with specific analysis of his non-exertional limitations. (Tr. 15-16.) As

discussed in greater detail above, the ALJ explained that the medical evidence and testimony do not indicate that Bouse's depression and anxiety, even when considered with his physical limitations, preclude him from gainful employment. (Tr. 15-16.) Likewise, the ALJ considered Bouse's difficulties in daily living, social functions, concentration, persistence, or pace and cited record evidence supporting his conclusion that those difficulties were minor. (*Id*.) The ALJ also identified Bouse's two episodes of decompensation, but noted that they occurred two years apart—they were too infrequent to change his conclusion. (*Id*.)

## D. The ALJ's hypothetical questions were not improper and his reliance on the vocational expert's answers was not error.

Bouse argues that the ALJ's reliance on the vocational expert's testimony was improper because the hypothetical the ALJ posed was inaccurate. (Doc. 20 at 16-19.) A vocational expert's opinion is substantial evidence supporting the ALJ's decision "only when based on a properly phrased hypothetical question." *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005) (quoting *Tucker v. Barnhart*, 363 F.3d 781, 784 (8th Cir. 2004)). "The hypothetical question must include all the claimant's impairments supported by substantial evidence in the record as a whole." *Id*. (citing *Tucker*, 363 F.3d at 784). "However, the hypothetical question need only include those impairments which the ALJ accepts as true." *Id*. (citing *Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991)).

The ALJ propounded the following written hypothetical to the vocational expert:

Assume a hypothetical individual who was born on June 28, 1965, has an 8th grade education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has [no relevant work experience]. Assume further that this individual has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except he is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours of an 8-hour workday; sit for 6 hours of an 8-hour workday; occasionally climb; frequently stoop, kneel, crouch, and/or crawl; frequently reach overhead; but he must avoid extreme cold; he is able to perform simple and

routine tasks; occasionally interact with supervisors and coworkers, but he is unable to communicate with the general public on behalf of an employer.

(Tr. 243-46.) In response to whether that hypothetical individual could "perform any unskilled occupations with jobs that exist in the national economy," the vocational expert responded that he could be an assembler or marker. (Tr. 246.)

Bouse argues that the hypothetical excluded several of his mental impairments affecting his "ability to concentrate and pay attention" and his desire to get out of bed every day, as well as his inability to endure long periods sitting. (Doc. 20 at 17.) In addition, Bouse asserts that "the record also clearly documents that [he] suffers from non-exertional impairments including . . . insomnia, paranoia, social phobias, [and] agoraphobia." (*Id.* at 18.)

For the reasons already discussed, the ALJ did not accept those limitations as true. Therefore, he was not required to include them in the hypothetical. *Grissom*, 416 F.3d at 837. What is more, the Court notes that, as discussed above, the ALJ considered all of Bouse's alleged mental and physical limitations when crafting his RFC such that the hypothetical's premise presupposes the evidence-based effect of the conditions Bouse highlights.

Bouse also argues that the ALJ's hypothetical resulted from the failure to consider the so-called *Polaski* factors. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The Commissioner concedes that the ALJ's decision does not cite *Polaski* by name but argues that the ALJ cited 20 C.F.R. §§ 404.1529 and 416.929, both of which codify the factors introduced in *Polaski*, and that the ALJ considered the factors when evaluating the credibility of Bouse's subjective complaints. (Doc. 27 at 12 (citing Tr. 18).) The Court agrees and concludes that the ALJ's hypothetical was not improper.

**E. The ALJ's and Commissioner's conclusions that Bouse was not disabled were not erroneous.**

Finally, Bouse argues that the ALJ and Commissioner were wrong in finding that he did not qualify for disability insurance benefits or supplemental social security income. (Doc. 20 at 19-20.) He asserts that his reported activities—keeping house, personal care, caring for family, walking to the hotel—"do not show that [he] could also engage in full time work 40 hours a week." (*Id*. at 20.) For all of the reasons discussed above, the Court concludes that the ALJ's determination is supported by substantial evidence, and the Court notes expressly that the ALJ considered much more than Bouse's daily activities in reaching the conclusion that he is not disabled.

**VI. Conclusion**

For the foregoing reasons, the Court finds there is substantial evidence in the record to support the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff David Wayne Bouse's complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 27th day of March, 2018.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**